JONES *v.* FOWLER.

Opinion delivered June 28, 1926.

1. TAXATION—WHO MAY PURCHASE AT TAX SALE.—One who was administrator of a decedent's estate and guardian *ad litem* of his minor children at the time dower was assigned, was not prohibited, after the administration had closed, from buying the land assigned as dower at tax sale after the administration had closed and the widow's grantee was in possession.

2. TAXATION—WHO MAY PURCHASE AT TAX SALE.—One who was commissioner to assign dower to a widow is not prohibited thereafter from purchasing the land so assigned at a tax sale.

3. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.—The admission of incompetent evidence will not be ground for reversal where it does not appear that it could have been prejudicial.

4. LIFE ESTATES—ADVERSE POSSESSION—REMAINDERMEN.—While a valid tax sale bars the right of all interested parties, those holding remainder interests as well as the life tenant, yet, when the sale is void, one who enters under a void sale is a trespasser, and the statute of limitations does not run against the remaindermen until the expiration of the life estate.

5. APPEAL AND ERROR—NECESSITY OF MOTION FOR NEW TRIAL.—Error in directing the jury to find for the plaintiffs is not before the Supreme Court where no motion for new trial was filed.

6. TAXATION—INVALID TITLE—COMPENSATION FOR IMPROVEMENTS.—Remaindermen who assert title to land sold for taxes at void sale 50 years before, and since held by assignees of the purchaser in good faith and under color of title, are required to pay for betterments and taxes, though no tax deed was issued until after suit was brought.

7. TAXATION—RECOVERY OF FORFEITED LAND—BETTERMENTS.—Crawford & Moses' Dig., § 3708, providing that one seeking to recover land sold for taxes should tender to the defendant in possession the taxes paid by him and the value of improvements, applies where the defendant is in possession under a donation certificate.

8. TAXATION—COMPENSATION FOR IMPROVEMENTS—EVIDENCE.—In suit by remaindermen to recover land from a tax purchaser, evidence of the cost of improving and fencing adjoining land was admissible in determining the enhanced value of the land by reason of improvements.

9. TAXATION—VOID SALE—RECOVERY OF TAXES.—Where defendants in ejectment paid taxes on an 80-acre tract and were entitled to recover the taxes paid on two-thirds thereof, the amount recoverable may be computed by taking two-thirds of the taxes paid,

where no testimony was offered showing any difference in value between the one-third and the two-thirds.

10. APPEAL AND ERROR—PRESUMPTION.—Although a witness computed the interest on tax payments at 10 per cent., it will be presumed, in the absence of a contrary showing, that the jury obeyed the court's instruction to allow 6 per cent. interest thereon.

11. JUDGMENT—AMOUNT.—Where successful plaintiffs in ejectment were awarded judgment for rents and profits, and defendants given a separate judgment for improvements, taxes and interest, it will be presumed that the amount of plaintiff's recovery was to be deducted from the larger amount due to the defendants.

Appeal from Yell Circuit Court, Danville District; *J. T. Bullock,* Judge; affirmed.

Ejectment of D. S. Jones and others, heirs of B. C. Jones, against J. S. Fowler, S. Bondi and O. L. Clement. Verdict was directed for plaintiffs, upon payment of the value of improvements. Plaintiffs appealed, and Bondi was granted a cross-appeal.

*Ward & Ward,* for appellant.

*John M. Parker,* for appellee.

SMITH, J. Appellants are the children and heirs at law of B. C. Jones, who died in 1863, and who was survived by his widow and minor children. Jones owned at the time of his death 400 acres of land in Yell County, and in 1866 a proceeding was had whereby dower was assigned to the widow in these lands. The lands assigned as dower were described as the east half of the southeast quarter section 23, township 5 north, range 22 west, and the west two-thirds of the west half of the southwest quarter section 24, township 5 north, range 22 west. The last described tract was described by metes and bounds in the order assigning the dower.

Mrs. Jones, the widow, married one Columbus Carpenter, and resided with him on the lands above described until February 25, 1867, at which time they executed a deed to Elizabeth Ann White conveying the interest of Mrs. Carpenter in the lands. After conveying her interest in the lands, Mrs. Carpenter moved to Texas, and resided there for a short time, when she returned to Clay County, in this State, where she resided until her death,

which occurred July 25, 1919. Mrs. White allowed the land to sell for taxes, and has passed out of the case and is not a party.

The northwest quarter of the southwest quarter section 24 was sold in 1869 for the taxes of 1868 to C. B. Mills, who received a certificate of purchase at the sale, but no demand was made for a tax deed until after the institution of this suit.

The southwest quarter of the southwest quarter section 24 and the east half of the southeast quarter section 23 were sold in 1872 for the taxes of 1871 to W. H. Ferguson, who received a tax deed June 29, 1874, for both tracts.

It appears that Ferguson had been the administrator of the estate of B. C. Jones and was the guardian *ad litem* for the minor children when the dower was assigned, and it is insisted that the tax sale to him was void for that reason. It was stipulated, however, that Ferguson was discharged as administrator in 1869, and the administration was then closed, and, at the time of his purchase at the tax sale, dower had been assigned to the widow, whose grantee was in possession and had been for several years before the sale. We perceive no reason therefore why Ferguson could not buy at the tax sale in 1872, long after the administration had closed. We regard these facts as unimportant, however, for the reason that the sale at which Ferguson purchased was void for a number of reasons, and the court so declared as a matter of law.

It is also argued that the sale to Mills was void for the reason that he had been a commissioner when the dower was assigned. His duties as commissioner were performed in 1866, and he did not purchase until 1869, and we perceive no reason therefore why he could not have purchased. But the fact that he was a commissioner is unimportant for the reason that the sale at which Mills purchased was void, and the court so declared as a matter of law.

Mills conveyed the forty-acre tract which he bought to W. H. Ferguson in 1869; Ferguson conveyed to Choate

in 1880; Choate conveyed to John M. Harkey in 1884; Harkey's estate was partitioned, and this forty-acre tract was assigned to Olga J. Harkey, who conveyed to Henry M. Corn in 1906, who conveyed to S. Bondi and O. L. Clement in 1912; and Bondi and Clement conveyed to J. S. Fowler February 1, 1918. These deeds conveyed the entire northwest quarter southwest quarter, although, as we have said, the dower assigned to Mrs. Carpenter in this tract was the west two-thirds thereof.

In a chain of title of equal length, beginning with W. H. Ferguson and ending with Fowler, the other two tracts were conveyed. Fowler's immediate grantors of all three tracts were Bondi and Clement.

Upon the death of Mrs. Carpenter, her heirs demanded possession of the land from Fowler which had been assigned as dower to their mother, and, when the demand was refused, suit was brought to recover possession. This suit was begun June 21, 1921, but was dismissed for the reason that there was no affidavit showing tender of the taxes and betterments. Later—and within a year—this suit was brought, and the affidavit showing a tender was filed.

It is assigned as error that the court permitted counsel for defendants to interrogate D. S. Jones as to the consideration paid by him to his sister for a deed to his sister's interest in the lands. This testimony was incompetent and should not have been admitted, but we do not see wherein it could have been prejudicial.

It is also assigned as error that the court permitted counsel for defendants to interrogate D. S. Jones concerning the tender of the taxes, improvements and interest. But there can be no prejudice in this, as the court treated the tender—whatever it was—as sufficient to authorize the institution and prosecution of this suit, and, more than that, directed the jury to find that plaintiffs were entitled to recover the lands.

The case of *Champion v. Williams*, 165 Ark. 328, 264 S. W. 972, is authority for the action of the court in directing the jury to find for the plaintiffs for the recov-

ery of the land. It was, of course, the duty of the life tenant to keep the taxes paid, and by § 10054, C. & M. Digest, it is provided that, if the life tenant neglects to pay the taxes on the land so held, and shall not, within a year after the sale, redeem from the sale, "such person shall forfeit to the person or persons next entitled to such land in remainder or reversion all the estate." But in the case just cited we held that, while a tax sale, if valid, barred the right of all interested parties, those holding remainder interests as well as the life tenant, yet, when the sale is void, one who enters under the sale is a trespasser, and the statute of limitations does not run against the remaindermen until the expiration of the life estate. That case was brought to recover the land within two years of the death of the life tenant, and the cause of action was held not barred by the prior possession of the defendants and their predecessors in title during the life of the life tenant.

Counsel for defendants, appellees here, insist for various reasons that the court erred in directing the jury to find for the plaintiffs for the possession of the land; but nowhere in their brief is it stated that a motion for a new trial was filed by them, and, in the absence of a showing that a motion for a new trial was filed and that this action of the court was assigned therein as error, the action of the court in so directing the jury is not before us for review.

It is strenuously insisted by counsel for appellants that the court was in error in charging the jury as to each tract of land "that, whether or not the deed purporting to be a tax deed is valid or invalid, is immaterial on the issues of betterments and taxes, and that, notwithstanding it might be invalid, still the defendants, under the record in the present case, are entitled to betterments and taxes." There was no error in this instruction. One tract of land had been sold for taxes fifty years before the death of the life tenant, and nearly that length of time had elapsed since the sale of the other two tracts, and the defendants in the case had acquired title to all

three tracts through a chain of a half a dozen or more conveyances to each. The life tenant and the remaindermen had removed from the State, and when they returned to the State they resided in a distant county, and there is nothing in the testimony to show that the lands were not occupied and improved in good faith and under color of title.

It is true that no tax deed issued on the sale to Mills in 1869 until after the institution of this suit, but we have set out the chain of conveyances by which Mills' title passed to the defendants, and these deeds constituted color of title. Moreover, as to this tract of land to which no tax deed issued prior to the institution of the suit, the case of *McCann* v. *Smith*, 65 Ark. 305, 45 S. W. 1057, applies. There a donation deed had been issued to a tract of land which had been sold to the State. The sale was void for the reason that the taxes had been paid. There had not been two years' possession under the donation deed at the time the owner brought suit to recover possession.

Two questions were presented for decision in that case, which the court stated as follows:

"First. Is two years' adverse possession of a tract of land held by a donee, first under a certificate of donation, and then under a donation deed by the State, sufficient to bar an action against him, when the possession under the deed has not continued two years, and it is necessary to add it to that held under the certificate to make the two years' adverse possession?

"Second. Is a donee, holding land under a donation deed executed to him by the State, entitled, in an action against him by the owner for the possession of the same, to recover the value of the improvements made by him on the land after a certificate of donation was issued to him, and before the deed was executed, when the land was sold or forfeited to the State after the taxes for which it was sold or forfeited had been previously and in due time paid, and the owner recovers a judgment against him, in such action, for the possession of the same?"

The court answered the first question by saying that the possession necessary to bar the "plaintiff, his ancestor, predecessor, or grantor," must be held under the donation deed, and, as the donee had not had possession under the donation deed for that length of time, the recovery of the land by the owner was upheld.

The second question was answered by holding that the donee was entitled to recover the value of his improvements made after his entry under his donation certificate before as well as after the receipt of his deed. This conclusion was reached by the construction given §§ 2595 and 2597, Sandels & Hill's Digest, which are to be found as §§ 3708 and 3710, C. & M. Digest.

Section 3708, C. & M. Digest, so far as it relates to this case, provides as follows: "No person shall maintain an action for the recovery of any lands, or for the possession thereof, against any person who may hold such lands by virtue of a purchase thereof at a sale by the collector, * * * unless the person so claiming such lands shall, before the issuing of any writ, file in the office of the clerk of the court in which suit is brought an affidavit setting forth that such claimant hath tendered to the person holding such lands in the manner aforesaid, * * * the amount of taxes and costs first paid for said lands, with interest thereon from the date of payment thereof, and the amount of taxes paid thereon by the purchaser subsequent to such sale, with interest thereon, and the value of all improvements made on such lands by the purchaser, his heirs, assigns or tenants, after the expiration of the period allowed for the redemption of lands sold for taxes, and that the same hath been refused."

In the case of *McCann* v. *Smith, supra,* Mr. Justice BATTLE, after quoting the provisions of the section just quoted from relating to donation deeds, said: "The requirement of §§ 2595 and 2597 of Sand. & H. Digest, which makes it the duty of the owner to pay for improvements, is based upon the equity and justice of the claim of the party who has made them in good faith, to com-

pensation for the same, and not upon the legality or non-payment of taxes. The Legislature evidently intended to encourage the purchase of lands sold for taxes, and to protect those making improvements on lands so purchased in good faith, by securing to them compensation for the same, in the event they should for any reason fail to hold the land. Color of title is not made a condition to this right by §§ 2595 and 2597. Our answer to the second interrogatory propounded in the beginning of this opinion is that he is, provided he has made the improvements in good faith, and the owner is entitled to rents and profits."

The tax deed obtained after the institution of the suit added nothing to the rights of the defendants, but, as appears from the case just quoted from, Mills and his successors would be entitled to recover the value of their improvements and taxes, even though Mills had only a certificate of purchase and had not procured a deed.

The court permitted one D. F. Montgomery to testify what it had cost him to improve and fence lands adjoining the lands in litigation, and the admission of this testimony is assigned as error. The court stated at the beginning of the examination of this witness that the cost of clearing was not the measure of betterments, but that testimony concerning cost would be admissible if the enhanced value equaled the cost of the improvement, and we think the examination of this witness and others on the same subject proceeded along the right line, and we think the rulings of the court in the admission of testimony and in the instructions on the subject made it clear that the money recoverable was not necessarily the cost of the improvement but the enhanced value resulting from the improvement, and that evidence of cost was admissible in determining that fact if the improvement enhanced the value of the lands.

The witness Montgomery owned land adjoining the land in litigation, and testified what it had cost him to clear similar land, and that he considered the enhanced value equal to the cost of the improvement. His testi-

mony was, in substance, that it cost from thirty to thirty-five dollars per acre to clear similar land, and that, when cleared, the value of the land was increased from thirty to thirty-five dollars per acre. This testimony was competent.

Certain improvements on the land had been made by O. J. Harkey, and he testified as to the cost and value of the improvements, and that he made them in good faith, believing he was the owner of the land when the improvements were made. This testimony was objected to upon the ground that Harkey was not a party to the litigation. It is true, as counsel insists, that Harkey was not a party to the suit, but he had owned at one time the northwest quarter of the southwest quarter section 24 and the east half of the southeast quarter section 23, and if, during his ownership, he made improvements which resulted in an enhanced value, which existed at the time the suit was instituted, it was competent for him to so testify, although he was not a party to the suit.

Witness Henry Chaney had, after examining the taxbooks, made a tabulation of all the taxes paid on the west half southwest quarter section 24 and the east half southeast quarter section 23, and objections were made to this testimony. It was not insisted that the tax records or the tax receipts be produced, but that the tabulation showed the taxes paid on the whole of the west half of the southwest quarter, whereas plaintiffs claimed and sought to recover only the west two-thirds of this tract. The witness stated, however, that by taking two-thirds of the taxes paid on the entire tract the amount paid on the land in litigation would be determined, and this he did. We see nothing wrong with this calculation. Defendant and his predecessors in title claimed the whole of the eighty-acre tract and paid on it as a whole, and we see nothing inequitable in apportioning the taxes in proportion to the acreage, especially as no testimony was offered showing any difference in value between the west two-thirds and the east third.

It is insisted that error was committed in admitting Chaney's tabulation because he had calculated interest at ten per cent., instead of six per cent. Section 3708, C. & M. Digest, from which we have already quoted, provides that the tax purchaser shall have interest on the amount of taxes paid, with interest thereon from the date of payment, "and the amount of taxes paid thereon by the purchaser subsequent to such sale, with interest thereon." As the rate of interest is not stated, it will be six per cent., and, while Chaney did calculate interest at ten per cent., the court told the jury the interest should be calculated at six per cent., and we must assume that the jury obeyed the court's instruction and made the necessary correction in Chaney's calculation, the contrary not being made to appear.

It is insisted that the jury allowed an excessive amount for the enhanced value of the land. The evidence on this subject is conflicting, and it would serve no useful purpose to set it out or to review it, and it will suffice to say that the court correctly declared the law on the subject, and the testimony on behalf of defendants is sufficient to support the finding made by the jury.

The jury found the value of the rents recoverable to be $1,033.60, and the improvements, taxes and interest to be $3,771.65, and the judgment was rendered accordingly, without specifically directing that the amount of rents be deducted from the larger item and that plaintiffs pay only the difference. This should have been done, but, in our opinion, such is the effect of the judgment, and we so construe it without remanding it for correction.

Certain other errors are assigned, but they relate to matters already thoroughly settled.

Upon a consideration of the whole case we find no prejudicial error, so the judgment must be affirmed, and it is so ordered.